# UNITED STATED DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>      v.<br><br>DAVID SCHOTTENSTEIN,<br><br>                    Defendant. | Case. No.: 1:22-CR-10005-DPW |

## OPPOSED TO TIME-SENSITIVE MOTION TO STRIKE GOVERNMENT SENTENCING MEMORANDUM

Defendant David Schottenstein, by and through his undersigned counsel, respectfully moves this Court to strike the government's sentencing memorandum because the government's memorandum, which heavily relied on the contents of a previously undisclosed wiretap call from June 28, 2019, failed to comply with Title 18, United States Code, Section 2518(9), which unequivocally prohibits the use of wiretapped communications in any federal "trial, hearing or proceeding," unless, **10-days prior to the proceeding**, the government discloses "a copy of the court order, and accompanying application, under which the interception was authorized or approved." The government completely disregarded its disclosure obligations here—in fact, up until the filing of the government's memorandum on March 14, 2023, David did not know that his phone *had* been the subject of a court-authorized wiretap. Even now, just four days before the sentencing proceeding, the government has yet to disclose the court orders and applications. As a result of the government's obvious failure to comply with the statutory provisions in Title III, the government's sentencing brief, which sandbagged David by weaponizing a single, undisclosed

June 28, 2019 telephone call (taken out-of-context) to blithely assert that David lied to pretrial services and the press, should be stricken.

**RELEVANT FACTS**

Until the government filed its sentencing memorandum on March 14, 2023 (see Dkt. 71 pages 4-7), the government never even alleged (much less affirmatively concluded) that David committed insider trading in the stock of GGB in 2019. Specifically:

- David was approached by the government in June 2021 and agreed to cooperate with investigators. Pursuant to that, David underwent two full-day proffer session and spoke with investigators dozens of times. In the proffer, David admitted to trading in possession of material non-public information ("MNPI"). David disclosed each time he did so, and the government pressed him hard as to what he knew and when. David was truthful.

- During these proffers the government <u>never</u> insinuated that David committed insider trading with respect to GGB stock.[1] Rather, David openly and honestly told the government that he encouraged many people to purchase GGB stock; not because he had inside information, but rather because his family had a good track record with retail companies and David believed that GGB would do well because of his family's involvement (which was public). The government, in the first proffer in June 2021, actually did ask David about the GGB executive who was captured on the June 28, 2019 recorded call (without disclosing the existence of that call to David). Specifically, investigators queried David if he had interactions with the GGB executive and whether they discussed trading in GGB. David answered honestly that he had a conversation with that executive about selling shares of GGB, with the executive telling David that he could not do that. David explained to investigators that he had replied to the executive "why can't I."[2] Thus, David, who did not know that the government had wiretapped his phone, was honest with the government about the contents of that call, which had taken place two years earlier. The government, in that proffer session (or thereafter), never asserted that David had illegally traded GGB based on MNPI.

- David spoke with the agents more than 100 times after that; the agents never asked him about his trading in GGB or implied that it was insider trading.

- In the fall of 2021, the parties began to negotiate the Information and plea agreement. Once again, the government never asserted that David's trading in GGB was insider trading. The first draft of the Information provided by the government stated that the

---

[1] David, of course, pled guilty to insider trading in Aphria stock in December 2018 and January 2019, which was being acquired by GGB. Dkt. 1 ¶¶43-55.

[2] To the extent that the Court wishes to see counsel's notes about the proffer memorializing this question and answer, counsel will make them available for *in camera* inspection.

2

insider trading conspiracy went from August 2017 to November 2021, which would encompass the late June 2019 call noted in the government's sentencing memo. The defense pushed back and pointed out that the last overt act (by Ryan Shapiro) took place in May 2019. The government thereafter changed the date of the conspiracy to August 2017 to May 2019, which is the date listed in the final Information. The plea agreement did not seek forfeiture for any GGB trades, and the defense has not agreed to pay any forfeiture for those trades.

- Neither the filed Information nor the government's factual allocation at the Rule 11 hearing indicated that David engaged in insider trading in GGB stock, and the Information lists no trades occurring after January 2019.

- In February 2022, David spoke with the news magazine Columbus Monthly. The article, in which David noted that he stopped doing improper trades in January 2019 (as set forth in the government's Information), was published online. Although the government was angry that David spoke to Columbus Monthly (and communicated that anger to defense counsel), the government never implied that David had engaged in insider trading in June 2019 in GGB (or at any point in time).

- In November 2022 David withdrew from cooperation.

- In January 2023, the government provided offense conduct to pre-trial. The offense conduct ended the conspiracy in May 2019, and included no insider trading in GGB stock. The last "insider" trade by David referenced in the government's offense conduct was a trade on January 10, 2019, where David sold 75,000 Aphria shares.

- The draft PSR, which contained the government's version of the offense conduct, was released on February 14, 2023 by pretrial. Once again, the draft PSR included no trading by David after January 10, 2019. *See* PSR ¶51. There were no references to insider trading in GGB.

- The parties sent objections to the draft PSR on February 28, 2023. The government was copied on the defense's objections. The defense's objections specifically limited the time period of David's illicit trading to August 2017 to January 2019, which is the exact time period as set forth in the Information. At no time thereafter did the government inform the defense that there was a wiretapped call that the government believed showed David engaging in insider trading in GGB stock in June 2019.

Late in the evening on March 14, 2023, seven days before the sentencing hearing before this Court, the government filed its sentencing memorandum. In the memorandum, the government, for the first time, told David that it had wiretapped its phone in June 2019. Shortly *after* filing the memorandum, at 10:31 p.m. on March 14, prosecutors emailed defense counsel,

3

attaching a single recording, stating that "we are producing the attached call, intercepted pursuant to a Court-authorized wiretap of your client's phone on June 28, 2019, which is excerpted in the government's sentencing memorandum." Given that David's sentencing memorandum was due just 89 minutes later, the defense could not possibly react to this late disclosure.

Notably, however, it is now clear that the government's wiretap occurred *after* the charged conspiracy, which the government's own Information showed ended in May 2019. In short, the government has not charged a *single trade* engaged in by David that took place during the wiretap of his phone (the defense is unaware for how long the wiretap lasted). That, in and of itself, is extraordinarily powerful evidence that David had ceased insider trading when he said he did. Nonetheless, the government inserted into its sentencing memorandum a single call from the wiretap where David is being told by the GGB executive not to trade in GGB. In the call, David expresses surprise at this request, and he questioned the executive as to why the executive believed his trading is unlawful. From this single call, the government contended in its memorandum that Schottenstein lied about ceasing trading "on his own" because "his trading based on MNPI continued at least well into 2019." The government neglects to say what specific MNPI David's trading was "based on," which trades were unlawful, how much David made from this trading, or any other details which provide *any* evidence as to the accuracy of the government's assertion.

**LEGAL ANALYSIS**

A federal wiretap is a remarkable intrusion on an individual's liberty and privacy interests. Because of this, the Title III Omnibus Crime and Control Act provides important limits on the government's ability to control and utilize wiretapped communications.

*First*, within 90 days of the end of the wiretap, the government must provide persons named in the order or application or other intercepted parties with notice of their interception on the wiretap. *See* 18 U.S.C. § 2518(8)(d). Although the government may extend this period upon an application of "good cause," the point of this notice is to allow those who have been intercepted to apply to the judge to inspect the wiretapped interceptions. *Id*. § 2518(8)(d)(3).

*Second*, 18 U.S.C. § 2518(9) plainly states that:

> The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom **shall not be received in evidence** or otherwise disclosed in **any trial, hearing, or other proceeding** in a Federal or State court unless each party, **not less than ten days before the trial**, hearing, or proceeding, **has been furnished with a copy of the court order, and accompanying application**, under which the interception was authorized or approved. This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before the trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

Here, the government did not provide David with any notice that he had been intercepted in a wiretap until late in the evening on March 14, 2023, which is when they filed their sentencing memorandum. Even now, the government has yet to provide a formal inventory (fact of entry of order and dates of entry of orders) *or* a copy of the application or orders issued by the district court judge, the identify of whom remains unknown. Although the government has told the defense that they received an order allowing for delayed notice until now, it is unclear how a court would allow delayed notice for a period of nearly *four years* after the wiretap ended. The defense's concerns that this delay was improper and lacked good cause are heightened by the fact that: 1) despite the delayed notice purportedly allowing the government to delay notice of the wiretap for four year, the government then used a wiretapped call in their publicly filed sentencing memorandum, and 2) within hours of the defense demanding that the wiretap

5

application and orders be turned over, the government moved to unseal them, although this unsealing has not yet occurred.

The government also did not abide by the plain language of 18 U.S.C. § 2518(9), which expressly prohibits the introduction of any wiretap evidence at a "trial, hearing, or proceeding" unless the defense "has been furnished with a copy of the court order, and accompanying application …". This was obviously not done here in advance of the government's filing of its memorandum, which contained this wiretap evidence. The government has conceded as much. At the latest, the court orders and application should have been provided by March 11, 2023. Yet we are now *five days* before the sentencing proceeding, and the government has not provided the defense with any of the required information.

David has suffered significant prejudice from the government's disclosure failures here. *First*, had the government told David that they wiretapped his phone for at least a 30-day period, David would have moved the court to inspect the interceptions, as is his right. There is obviously significant exculpatory information in those tapes given that the government did not charge a *single crime* based on the wiretaps. *Second*, had the government provided 10-days' notice of their plan to introduce wiretap evidence into its sentencing memorandum, David would have provided a full-rebuttal to the government's arguments concerning GGB trading in his own sentencing memorandum. Instead, the government's memorandum, which excerpts a single call from an apparently fruitless wiretap, allowed the government to spin the narrative that the government's arguments are uncontradicted and unchallenged. But that is not what happened. The defense has simply been sandbagged by the late disclosure of recordings the government has had in their possession for nearly four years. This is patently unfair and prejudicial.

Moreover, David did not trade based on MNPI in GGB stock. In addition to putting forth the arguments described above, which conclusively show that for nearly two years (and all during the time of David's cooperation) the government never once asserted that David's trading in GGB in June 2019 was illegal, David can explain his trading and the recorded call.

In that regard, David's extended family, most notably Joey Schottenstein, was a former director of GGB and he had a large ownership stake in the company. For a long time, Joey encouraged people to purchase GGB stock—not because of material inside information—but because Joey believed that it was a company on the move. David thereafter accumulated a sizeable position in GGB over the years—starting from when GGB was a private company—holding nearly 500,000 shares (including warrants). Although David is wealthy, David is also chronically illiquid. In the spring of 2019, David needed to come up with $500,000 in cash to pay for a Las Vegas real estate deal, but David did not have the money. *See* Exhibit A at 1-3 (showing that David needed to pay $500,000, of which $325,000 was in cash and $175,000 was in Line Of Credit and would need to wire funds); *see* Exhibit B at 2 (showing the June 25, 2019 wire of $200,000 derived from the sale of GBB). As the exhibits show, David sold GGB stock to raise cash.

The call with the GGB executive that the government quotes in in its memorandum took place just days after that sale, on June 28, 2019. In the portion of the call *not* quoted in the government's memorandum, David explained to the GGB executive, as corroborated by the above documents, that he sold shares not because of inside information, but because he "needed to fund an investment," which is true, and as the exhibits make clear. The extended back and forth between David and the executive, during which they discussed David's trading and when he was allowed to sell, took place because the executive misapprehended the law on insider

7

trading. The executive wrongly told David that "it's illegal to trade shares when you have inside information." But that is not the law. It is illegal to willfully trade shares on the basis of "*material* inside information" in violation of a duty owed to any insiders (David had no position at GGB), which is the point that David was trying to make in his call with the executive. Simply knowing information about the company does not make it illegal to trade. That information must be material – meaning the information must reasonably be expected to affect the value of the Company's stock—and David's trading must breach a duty owed to an insider. *See, generally, United States v. Altaver,* Jury Instructions for misappropriation theory of insider trading, 17-CR-10216-DJC, Dkt. 111 ("*Altaver* Jury Instructions") at 181-192; *see also United States v. Smith*, 155 F.3d 1051, 1068 (9th Cir. 1998) ("It is the insider's use, not his possession, that gives rise to an informational advantage and the requisite intent to defraud."); *SEC v. Lipson*, 278 F.3d 656, 660 (7th Cir. 2002) ("The weight of authority, scanty though it is, supports the position that the Commission had the burden of persuading the jury that Lipson's trades had been influenced by the inside information that he possessed").

This is why David stated: "let me ask you a question. How am I supposed to – if I hear stuff, right? If stuff's going around and I hear stuff, how am I supposed to ever sell any shares?" David was trying to explain to the executive that he was not trading *on the basis of* material inside information; simply learning generic information about the company from insiders did not mean that that information was market moving. *See Altaver* Jury Instructions at *186* (Court stating that government must prove that the defendant "willfully breached his duty of trust and confidence [to the insider] by trading in Ariad stock while in possession of material, nonpublic information he obtained from her); *id*. at 187 (Court defined material as being nonpublic information that a "reasonable investor would have considered it significant in deciding whether

to buy, sell or hold securities."). To prove his point, David even pointed out to the executive that he had sold shares even though he suspected that there was "probably some big stuff happening," meaning that he was trading *against* his interests by selling shares, he sold shares because he "had no [other] choice." David was simply not engaging in fraud. *See Altaver* Jury Instructions at 183-84 (Court instructing jurors: "Generally speaking, insider trading involves intentionally using inside information about a company to *gain an unfair advantage* over other people who are buying and selling the stock but do not have the same access to the same information."); *id.* at 187 (the "material, nonpublic information" must be a "factor in the decision to buy or sell the stock."); *id*. at 189 (defendant must have participated in a scheme to defraud). Had the government properly disclosed its intention to use that recording in its memorandum—a recording they have known about for nearly four years—David would have presented these facts in his own memorandum.

Finally, the government does not deny that it did not comply with 18 U.S.C. § 2518(9), but claims that it did not have to for a few reasons. *See* Exhibit C at 2.

*First*, the government claims that they did not have to provide 10-days of notice because the purpose of the rule is to provide defendants with an opportunity to suppress the evidence. Because David has pled guilty, the government contends, he has no right to suppress evidence. The government misses the point. The defense is not trying to suppress evidence. The defense is trying to enforce the express plain language of that statute, which clearly states that wiretap evidence *cannot* be introduced into a proceeding *unless* the government provides the defense with the required materials 10-days prior to the proceeding. Put simply, there is no language in the statute limiting the disclosure rule to situations where the government concludes, *ex parte*, that a defendant may have the ability to potentially suppress the wiretap evidence. With that said,

9

David does have a right to suppress, given that there is no appellate waiver and the recordings relate to sentencing (not his plea), which has not yet occurred.

*Second*, and similarly, the government argues that the "rules concerning admissibility of evidence in criminal trials do not apply" at sentencing, and therefore Section 2518(9) does not apply. But again, the plain language of the statute controls. Section 2518(9) applies not just to trials but to "any trial, hearing, or other *proceeding* in a Federal or State court …". It would make little sense to limit the application of the rule to trials when the language of the statute applies to "any … hearing, or other proceeding." *See, e.g., United States v. Perez*, 353 F.3d 131, 138 (D. Mass. 2018) (in analyzing Section 2518(9) court relied on the "specific language" of the statute to hold that "congressional intent to require complete disclosure of the affidavit is clear," rejecting government's argument that certain potentially privileged information could be redacted).[3] In short, admissibility is a red herring – the question is whether the government complied with the statute.

*Third*, the government contends that the late disclosure was necessary because the wiretap is being used for impeachment purposes due to David's statements about his insider trading ending in early 2019 to probation (*see* Exhibit C at 2), insinuating that it was some type of late disclosure *by David* that caused the government to rely on the June 2019 call. This argument defies credulity and smacks of bad faith. Not only does the wiretap not stand for the proposition the government says it stands for, but David made his statements about ending his insider trading in January 2019 to the Columbus Monthly in February 2022, *a full year ago*. It is

---

[3] The Senate report on Title III defines proceeding as being "intended to include all adversary type hearings. It would include a trial itself, a probation revocation, proceeding, or a hearing on a motion for reduction in sentence. S.Rep.No. 1097, 90th Cong., 2d Sess. available at:
http://www.harrislawoffice.com/content/areas_of_practice/federal_firearms/legislative_history/Gun%20Control%20Act%201968%20Senate%20Report%2090-1097.pdf

these comments to the reporter that the government cites in its brief to claim that David was untruthful. *See* Dkt. 71 at 4-5. In fact, David's more recent comments to probation are only included in a parenthetical at the top of page 5 of the memorandum. In any event, the defense's objections to the PSR, which contained that same information, were served on February 28, 2023, nearly three weeks ago, giving the government plenty of time to comply with the 10-day rule. The government has no excuse for delaying the disclosure of the recording, given that the recording has been in possession of the government for nearly four years, and the information that the government seeks to challenge has been known to them for a year.

Finally, although the government has offered to continue the sentencing to allow the defense to review the documents that they still have not disclosed, that solution is unworkable. Many people are flying into Boston early next week to support David at his sentencing. These people are coming from Florida, New York, California, and Ohio, amongst other places, and as far away as Israel. Some of these people have already even arrived in the United States from overseas to attend the proceeding. These people have paid for and booked travel in reliance on the March 21, 2023 sentencing date, which was set months ago. These people should not be forced to return home, with wasted trips and expenses, simply because the government decided it would be inconvenient not to disclose what they were obviously obligated by statute to disclose. To the extent that this Court entertains the government's suggestion for a continuance, David asks that the March 21, 2023 sentencing date be kept out of respect for all those who have traveled so far to support him.

For all these reasons, the government's late disclosure of the wiretap materials—which still has not occurred—runs afoul of Section 2518(9). Because of this, the government's

11

sentencing memorandum, which contains wiretapped materials publicly disclosed in violation of Title III, should be stricken in advance of sentencing.

Dated: March 17, 2023

Respectfully submitted,

**FREEDMAN NORMAND FRIEDLAND LLP**

*/s/ Eric S. Rosen*
Eric S. Rosen (Bar No. 568931)
Richard Cipolla (Bar No. 697153)
Devin Freedman (*admitted pro hac vice*)
225 Franklin Street, 26th Floor
Boston, MA 02110
Tel.: (617) 977-4163
Email: erosen@fnf.law

*Counsel for Defendant David Schottenstein*

### CERTIFICATE OF SERVICE

I, Eric S. Rosen, hereby certify that on March 17, 2023, a true and correct copy of the foregoing was filed publicly on ECF and sent via email to all registered participants.

*/s/ Eric S. Rosen*
Eric S. Rosen

### COMPLIANCE WITH LOCAL RULE 7.1(a)(2)

Undersigned counsel conferred with the Government on March 16, 2023, and the government opposes the relief sought.

*/s/ Eric S. Rosen*
Eric S. Rosen